1
2
3
4
5                                                                     The Honorable Robert S. Lasnik
6
7                      UNITED STATES DISTRICT COURT FOR THE
                              WESTERN DISTRICT OF WASHINGTON
8                                         AT SEATTLE
9
10   UNITED STATES OF AMERICA,                  No. CR17-290RSL
11                  Plaintiff,
12           v.
                                                GOVERNMENT'S SUPPLEMENTAL
13                                              SENTENCING MEMORANDUM
     MUHAMMAD FAHD,
14
15                  Defendant.
16

17       Comes now the United States of America, by and through undersigned counsel,
18   and files this Supplemental Sentencing Memorandum in order to respond to arguments
19   made in by Defendant, Muhammad Fahd, in Defendant's Memorandum re: Loss Amount
20   for Sentencing Purposes.
21                          I.      INTRODUCTION
22       The government's initial Sentencing Memorandum argues that there are three
23   different ways, each of them independently sufficient, for the Court to conclude that the
24   loss in this case was more than $150 million: (1) based upon AT&T's loss calculation:
25   (2) based upon Application Note 3(F)(i) to Section 2B1.1 of the Sentencing Guidelines;
26   and (3) as a "reasonable estimate of the loss." *See* Government's Sent. Mem. at 27-31.
27
28

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 1
FAHD (CR17-0290RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Fahd subsequently filed a Memorandum re : Loss Amount for Sentencing Purposes [hereinafter Defendant's Memorandum], that challenges this conclusion. That memorandum is based upon a misinterpretation of information in the principal spreadsheet used by AT&T to calculate its loss. And, it fails to provide a sufficient basis for the Court to reject any of the three grounds provided by the government to support the loss amount. As a result, the Court should find that the loss amount in this case in fact exceeds $150 million.

## II.   ARGUMENT

### A. AT&T's Loss Calculation

As set forth in the Government's Sentencing Memorandum and the accompanying Affidavit of Alfred Carter, AT&T's loss calculation for the period 2012-13 (when the majority of the loss took place), was based upon an extrapolation of the loss from a sample of 50,929 telephones, to the entire 1,802,871 cellular telephones unlocked during those two years. *See* Government's Sent. Mem. at 23-24, 27-29. Carter Affidavit ¶¶ 18-23. That analysis is based upon a spreadsheet, prepared by AT&T analyst Ana Friedrichs, that contains line-by-line loss calculations for the 22,476 cellular telephones from that 50,929 sample for which AT&T actually suffered a loss. (The government did not file that spreadsheet as an Exhibit to its original Sentencing Memorandum, but is filing a copy, with customer names and addresses redacted, as Exhibit 1 to this Supplemental Sentencing Memorandum, given the issues raised by Fahd, so that the Court can examine it, should it wish to do so.)

   1.  *AT&T's methodology*

Fahd's principal challenge to AT&T's detailed loss calculation appears to focus on the selection of the 50,929 telephones included in the sample. As set forth in the Carter Affidavit, the 50,929 telephone sample was "a randomly-selected sample of 50,929 suspect unlocks." Affidavit of Alfred Carter ¶ 19. Although, Fahd asserts "the bulk of the 59,000+ IMEI's that comprise the random sample used to extrapolate a loss have nothing to do with the fraud loss here," *see* Defendant's Mem. at 10, Fahd's two

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 2
FAHD (CR17-0290RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

arguments in support of that claim reflect a misunderstanding of the data in the spreadsheet.

### a. The Dates of the Sample Unlocks

Fahd first claims that "many of the entries are for accounts that were closed as early as **2003**, a year when 22,433 accounts were closed." Defense Mem. at 10. The Government presumes that this is a typographical error, since that would reflect all but 43 of the 22,476 telephones included in the spreadsheet, and since the government can find nothing in the spreadsheet to support that assertion. Fahd does identify a few of specific entries on the spreadsheet that reflect dates in the years 2005, 2006, 2008, 2009, and 2010. *See id.* (identifying entries 22,430, 22,454, 22,477, 22469, and 22,424).

In the case of these specific entries, Fahd appears to be looking at Column AD – titled "Status Effective Date – Acct. Updated." But, that column refers to the date of an updating of the entire customer account, which may include multiple cellular telephones. Fahd fails to note that each of the line entries to which Fahd refers contains a later date in Column W that describes it as a case involving "Add On Fraud-Cancellation." These are instances in which someone added a telephone to a customer's account and the customer reported that that had been done by someone else (i.e., fraudulently). And, Fahd misses the fact that each of these lines, lists a date in Column X – titled "Status Eff Date – Mobl updated." That date reflects the actual relevant date for the fraudulent add-on and unlock. All of these are in 2013 – the period of fraudulent unlocking – rather than in the earlier years. As a result, Fahd's claim that the analysis includes out-of-period unlocks is incorrect.

### b. The Reasons for Unlocks

Fahd also notes that Column W – titled "Status Reason Desc – Mobl updated" - of Ms. Friedichs' spreadsheet contains an array of different reasons, many of them that do not include the word fraud,. *see* Defendant's Mem. at 6-9, and claims this undermines AT&T's analysis. This also is incorrect.

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 3
FAHD (CR17-0290RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Column W contains information regarding customer accounts from AT&T's records, not information generated by Ms. Friedrich's analysis. It may be information provided by a customer. For example, "Lost/Stolen," indicates that the customer had reported the telephone stolen. Simlarly, "Bankruptcy" reflects that the customer had told AT&T that he/she was in bankruptcy." And, "No reason given" indicates that the customer refused to provide information. Or, it may reflect information entered by AT&T. For example, "Non pay first pay default" indicates that the customer never made any payments after taking possession of the telephone.

The information in Column W does not, however, undermine AT&T's analysis. In the case of each of the 22,476 telephones reflected in the spreadsheet, the customer failed to fulfill his/her contractual obligation to pay for the cellular telephone, and AT&T suffered a loss. In each of these cases, the ability to unlock the telephone and to use it elsewhere was a necessary step in causing that loss. There is no question that these cellular telephones were unlocked. If they had not been unlocked, they would not have been included in the sample. And, the information in Column W merely provides factual context, rather than calling AT&T's analysis into question.

- In the case of a stolen telephone, that unlock likely was purchased by the thief, or by a person seeking to resell the telephone.

- In the case of bankruptcy, it likely was by the purchaser of the telephone, seeking to obtain cheaper service from a carrier that did not need to seek repayment of the purchase price of the telephone.

- In the case of a first payment default, it may have been by the purchaser of the telephone, who intended to defraud AT&T from the start, or by someone directing the purchaser to make the fraudulent purchase.

In all of these cases, however, fraudulently unlocking the telephone was a necessary step in being able to continue to use the telephone without continuing to pay

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 4
FAHD (CR17-0290RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  AT&T for the purchase of the telephone.  And, in all of these cases, AT&T lost part or all
2  of the purchase price of the telephone because of that unlocking.  As a result, the fact that
3  Column W reflects an array of reasons is irrelevant.  It does not suggest that telephones
4  should not have been included in the random sample of telephones analyzed by AT&T.
5  And, Fahd's reliance upon Column W entries to challenge AT&T's analysis fails.
6        2.  *Other Statements by AT&T*
7        Fahd also claims that AT&T's loss claims have been "inconsistent."  *See*
8  Defendant's Mem. at 12.  As support, Fahd attaches two affidavits signed by Tim Glantz,
9  an AT&T employee, in 2018, and an article from appleinsider.com dated 2019.  *See*
10 Defendant's Mem. Exhs 3, 4, 5.  But, those all reflect preliminary estimates of AT&T's
11 loss.  And, critically, they are all from *before* Abhijet Railkar, Ana Friederichs, and
12 Alfred Carter performed the actual analysis that the government has presented to the
13 Court.  The fact that these earlier estimates were lower than what AT&T's ultimately
14 found when it completed its analysis is scarcely grounds to reject that analysis, which has
15 been presented to the Court in the form of a sworn Affidavit from AT&T employee
16 Alfred Carter.
17 **B.  Application Note 3(F)(i)**
18       Fahd also challenges the Court's ability to rely upon Application Note 3(F)(i) to
19 Section 2B1.1 based upon the Sixth Circuit's recent decision in *United States v.*
20 *Roccardi,* 989 F.3d 476 (6th Cir.); *see also* Government's Sent. Mem. at 29 n.5
21 (identifying this issue).  As noted in the Government's Sentencing Memorandum, the
22 Ninth Circuit consistently has affirmed the application of Application Note 3(F)(i) to
23 calculate loss amounts.  The Government believes that remains good, and controlling,
24 law.
25       Although Fahd notes that the Government has not identified any case in which a
26 court has applied this Application Note in the case of unlocking telephones, the
27 Government presumes that that is because this is a relatively novel prosecution.  As a
28 result, the Court should not draw any negative inference from the lack of prior cases

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 5
FAHD (CR17-0290RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  directly on point. Fahd does not challenge the fact that the Application Note, by its plain
2  terms, applies in this case. *See* Government's Sent. Mem. at 29-30.
3        Although Fahd does claim that he should not be held accountable for the slightly-
4  more-than-half of the cellular telephones on which AT&T did not suffer a loss,
5  Application Note 3(F)(i) applies to all "telecommunications instrument[s] or
6  telecommunications account[s] . . . possessed." As a result, it applies to all of the
7  fraudulent unlocks Fahd obtained through bribery and malware, even if individual
8  unlocks did not cause a loss to AT&T. For these reasons, even without AT&T's loss
9  calculation, the Court should find a loss amount exceeds $150 million.
10    **C. Reasonable Estimate of Loss**
11       Fahd's memorandum does not challenge, except implicitly, the fact that the Court
12 need only make a reasonable estimate of the loss amount, and that it is reasonable for the
13 Court to find that the loss exceeded $150 million, based on (1) Fahd's admission about
14 the number of telephones he unlocked and (2) the fact that telephones cost hundreds of
15 dollars apiece, so that it is reasonable to assume that the loss per unlocked cellular
16 telephone would be at least $134.22 per telephone. *See* Government's Sent. Mem. at 31.
17 This therefore serves as a third adequate and independent basis to support a conclusion
18 that the loss in this case exceeds $150 million.
19 //
20 //
21 //

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 6
FAHD (CR17-0290RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### III. CONCLUSION

For the foregoing reasons, and those in the original Government's Sentencing Memorandum, the Court should find that the loss amount in this case exceeds $150 million, should apply a 26-level adjustment to Fahd's offense level based on loss amount, and should order Fahd to pay restitution in the amount of $200,620,698.

DATED: this 15th day of September, 2021.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

*s/ Andrew C. Friedman*
ANDREW C. FRIEDMAN
FRANCIS FRANZE-NAKAMURA
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington  98101-1271
Telephone:  (206) 553-7970
Fax:  (206) 553-0882
E-mail:  Andrew.Friedman@usdoj.gov
Francis.Franze-Nakamura@usdoj.gov

*s/ Anthony Teelucksingh*
ANTHONY TEELUCKSINGH
Trial Attorney
Computer Crime & Intellectual Property Section
Department of Justice
1331 New York Avenue, N.W.
Washington, D.C.  20530
Telephone:  (202) 353-4779
E-mail:  Anthony.Teelucksingh@usdoj.gov

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 7
FAHD (CR17-0290RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970